**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**


**BRENDA BEASLEY**                                                      **PLAINTIFF**

**v.**                                          **CIVIL ACTION NO. 3:09cv764-TSL-MTP**

**MICHAEL J. ASTRUE,**                                              **DEFENDANT**
**Commissioner of Social Security**

### REPORT AND RECOMMENDATION

Plaintiff Brenda Beasley brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner denying her applications for a period of

disability and supplemental security income.  The matter is before the Court on the

Commissioner's [12] Motion to Affirm his decision and on Plaintiff's [9] Motion for Summary

Judgment seeking reversal and remand to the Commissioner for further proceedings.  Having

considered the pleadings, the transcript of the record, the submissions of the parties, and the

applicable law, the undersigned recommends that Plaintiff's [9] motion be granted in part and

denied in part, and that the Commissioner's [12] motion be denied.

### PROCEDURAL HISTORY

Plaintiff applied for disability income benefits and supplemental security income ("SSI")

under the Social Security Act on July 20, 2006.  (Tr. 111-116).[1]  Following a hearing held March

6, 2009 (Tr. 21-57), Plaintiff received a notice of unfavorable decision from Administrative Law

Judge ("ALJ") David S. Pang dated May 6, 2009.  (Tr. 9-20).

Plaintiff requested review of the ALJ's decision by the Appeals Council.  (Tr. 4).  By

---

[1]The transcript references coincide with the page numbers on the lower right hand corner
of the administrative record, which is attached to the Commissioner's Answer at docket entry [6].

notice dated October 22, 2009, the Appeals Council denied further review and informed Plaintiff

that the ALJ's decision is the final decision of the Commissioner of Social Security in her case.

(Tr. 1).  Aggrieved by the ALJ's decision, Plaintiff filed her [1] complaint in this Court on

December 18, 2009.

## FACTUAL/MEDICAL HISTORY

Plaintiff was born June 15, 1960.  (Tr. 111).  She testified at the hearing that she last

worked in December 2003 as an administrative specialist with the Mississippi Air National

Guard on a part-time basis (one weekend per month, approximately 16 hours per month).  She

was part-time because those were the amount of hours she was offered.  (Tr. 28).  This position

was part of her military service, and she left following a positive drug test.  (Tr. 29).[2]

Plaintiff previously worked as a surgical technologist at the Mississippi Methodist

Rehabilitation Center, assisting with surgeries in orthopedics, neurosurgery, and plastic surgery.

(Tr. 28-29).  She left this position because she had an operation on her hands and was placed on

light duty, but because there were no light duty positions available her job was discontinued.  (Tr.

29).

Prior to this Plaintiff held positions as a surgical technologist at the University of

Mississippi Medical Center and as a ward clerk and nurse's assistant at the Jackson Hinds

Comprehensive Health Center.  (Tr. 41).

At the time of the hearing, Plaintiff's 18 year-old son, her 17 year-old grandchild, and her

---

[2]The drug at issue was Lorcet Plus which she was taking for pain.  She testified that she
had reported this in advance to her employer.  Nevertheless, the decision was made that she
should retire for medical reasons.  (Tr. 35-37).

21 year-old daughter lived with her.[3]  She identified the chores she did at home as cleaning the bathroom and making up her bed.  (Tr. 30).  She was driven to the hearing but sometimes drives herself.  (Tr. 29).

The medical impairments she testified as suffering from are Fibromyalgia, major depression, Raynaud's syndrome, high blood pressure, amnesia, and panic attacks.  Her medications include Wellbutrin, Paxil, Xanex, Flexaril, Tramadol, medicine for her blood pressure, Vitamin A, and Vitamin D.  (Tr. 30).

Plaintiff's depression started when her health started to deteriorate.  She had suffered panic attacks in the past, which occurred at random but are more frequent at present.  She does not like crowds.  (Tr. 32-33).

Plaintiff tries to do some exercises as often as she can to keep her limbs from becoming stiff, and she takes warm baths to try to make the pain subside.  She has an exercise bike at home supplied by the VA, and tries to ride it.  (Tr. 32, 42).

The medical and other records pertaining to Plaintiff's condition are voluminous.  The Mississippi Department of Rehabilitation Services performed a vocational analysis in October 2006.  The assessment indicated that she had no postural, manipulative, visual, or communicative limitations.  The only environmental limitation was the avoidance of even moderate exposure to extreme cold.[4]  Moderate limitations (as opposed to marked limitations) were found in her ability

---

[3]In her July 20, 2006 application for benefits, Plaintiff indicated she had lived at her current address for about 10 years and at that time lived with her 2 children, ages 15 and 19.  (Tr. 112).

[4]This is associated with Raynaud's syndrome, which is a "condition that causes some areas of [the] body–such as . . . fingers, toes, the tip of [the] nose and . . . ears–to feel numb and cool in response to cold temperatures or stress."  *See* www.mayoclinic.com/health/raynauds-

to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to sustain an ordinary routine without special supervision, the ability to work in coordination with or proximity to others without being distracted by them, the ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes.  (Tr. 214).

The Office of Disability Determination Services documented Plaintiff's claim for social security benefits by interviewing her over the phone.  The report, dated January 30, 2007, reveals that Plaintiff sleeps most of the day, will watch TV or read the Bible, and will fix a TV dinner.  Her conditions did not affect her sleep.  Plaintiff prepares her own meals daily, which usually consist  of sandwiches and frozen dinners.  She could not do complete meals, but identified cleaning as a household chore she could perform.  She could walk, drive a car, ride in a car, and was able to go out alone.  Plaintiff was able to pay bills, handle a savings account, count change, and use a checkbook/money orders.  She reads and watches TV.  She indicated that she did not spend time with people, but tried to go to church if she had a ride.  She wears glasses and uses a cane.  (Tr. 234-240).

Most of Plaintiff's medical records show that she smokes approximately one pack of cigarettes a day, and she acknowledges in her [10] memorandum (at p. 6) that the records reflect

disease.

4

chronic smoking.[5]

Buren S. Smith, M.D., provided a comprehensive mental status evaluation in March 2006 with respect to Plaintiff.  He diagnosed her with depressive disorder, generalized anxiety disorder, and panic disorder, with all symptoms made worse by adjustment problems to her recurrent pain, fibromyalgia, and Raynaud's disease.  Her psychiatric symptoms did not per se preclude simple repetitive type work.  Dr. Smith noted that Plaintiff had moderate problems in performing routine, repetitive tasks and moderately severe problems interacting with coworkers and receiving supervision.  She had moderate to perhaps moderately severe problems maintaining concentration and attention in a job setting.  Plaintiff was considered competent to handle her finances, could do light domestic chores, and possessed basic communication and social skills sufficient enough to interact with others so that her needs can be met.  (Tr. 265-269).

Dr. Lawrence M. Sulton, Jr. of the Choices for Children Clinic in Jackson, Mississippi treated Plaintiff over a period of time.  His medical records consisting of office notes are in the record.  (Tr. 272-321).  Those notes reflect Plaintiff suffering from depression, anxiety, insomnia, and Fibromyalgia.

Madena Gibson, M. D., provided a Physical Residual Functional Capacity Assessment in October 2006.  It showed that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk with normal breaks for a total of about 6 hours in an 8-hour work day, and sit with normal breaks about 6 hours in an 8-hour work day.  Plaintiff had no postural, manipulative, visual, or communicative limitations.  The only environmental limitation was to

---

[5]Medical records from the Department of Veterans Affairs recognized that Plaintiff is at least a 1 pack per day smoker who declined patches or medications.  (Tr. 394).

avoid even moderate exposure to extreme cold.  (Tr. 332-338).

Linda Baker, Ph. D., filled out a psychiatric review technique in October 2006.  She based her medical disposition on affective disorders and anxiety-related disorders.  Plaintiff had moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace with no episodes of decompensation.  In numerous specific areas of Plaintiff's understanding and memory, sustained concentration and persistence, social interaction, and adaptation, Plaintiff was either not significantly limited or moderately limited.  Dr. Baker's functional assessment was that Plaintiff appears capable of understanding and carrying out instructions and can maintain attention and concentration adequately for 2 hour periods in an 8 hour work day.  She can complete a normal work week without excessive interruptions from psychological symptoms, can relate appropriately to coworkers and supervisors on a limited basis, and can adapt to a job setting.  (Tr. 339-355).

Records from the Department of Veterans Affairs take up the bulk of the medical records. (Tr. 381-618; 633-638).  These records indicate, *inter alia*, that Plaintiff has numerous fibroids in her uterus, but she did not want surgery due to anxiety and the inability to meet obligations at home.  (*See, e.g.*, Tr. 394).  These records further reflect that, if Plaintiff did have Raynaud's, it was benign and Plaintiff did not meet the diagnostic criteria for Fibromyalgia.  (Tr. 506).  *See also* (Tr. 394) (ruling out Fibromyalgia and Raynaud's and suggesting pain may be more psychological/functional).  It was noted Plaintiff has chronic anxiety with history of panic disorder.  (Tr. 539).

Akif Khawaja, M. D., filled out a Mental Residual Functional Capacity Questionnaire in

May 2007.  The areas in which limitations were serious, but not precluded, were Plaintiff's ability to complete a normal work day and work week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; deal with normal work stress; understand and remember detailed instructions; carry out detailed instructions; and deal with stress of semiskilled and skilled work.  Plaintiff's abilities in other areas were unlimited or very good, or limited but satisfactory.  On the average, Dr. Khawaja anticipated that Plaintiff would be absent about 4 days per month due to her impairments or treatment.  (Tr. 619-620).  *See also* (Tr. 623-629) (Dr. Khawaja's progress notes).

Nita Magee, a nurse practitioner, also filled out a form dealing with mental abilities related to work activities.  She found Plaintiff seriously limited, but not precluded in some categories; unable to meet competitive standards in others; and no useful ability to function in still others.  She anticipated that Plaintiff would be absent from work more than four days per month due to impairments.  (Tr. 621-622).

Finally, the record contains radiology reports in 2009 from Veterans Affairs regarding Plaintiff's lumbar spine.  An MRI showed a lateral disk protrusion at the L4-5 level on the right, and a small disk protrusion at the L5 level on the left.  Vertebral body height, alignment, and disc space were well-maintained.  There was no acute fracture or subluxation.  Soft tissues were unremarkable.  (Tr. 630-632)

## **BURDEN OF PROOF**

In *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988), the Fifth Circuit detailed the shifting burden of proof that applies to the disability determination:

An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act.  Once the claimant satisfies his

7

initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled.  In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f) (1988):

> 1.  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
> 2.  An individual who does not have a 'severe impairment' will not be found to be disabled.
> 3.  An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
> 4.  If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.
> 5.  If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

(citations and footnotes omitted).[6]  A finding that a claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Harrell*, 862 F.2d at 475.

## THE ADMINISTRATIVE LAW JUDGE'S ANALYSIS IN THIS CASE

After a hearing, and considering the testimony and record, the ALJ rendered his decision on May 6, 2009.  (Tr. 9-20).  At step one of the five-step evaluation, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since May 11, 2006, the alleged onset date of her disability.[7]  At step two, he found that Plaintiff suffers from the following severe impairments:

---

[6]20 C.F.R. § 404.1520 sets forth the five-step sequential analysis applicable to an application for a period of disability or disability insurance benefits (or both).  The same five-step sequential analysis for SSI is set forth in 20 C.F.R. § 416.920.

[7]At the hearing, the ALJ granted Plaintiff's motion to amend the onset date to December 2, 2006.  (Tr. 26-27).  In her [10] Memorandum in Support of Motion for Summary Judgment, Plaintiff notes that different dates are listed in the ALJ's decision, "and it appears that the correct

degenerative disc disease, fibromyalgia, depression and anxiety.  (Tr. 11).

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[8]  (Tr. 12).  The ALJ made detailed findings with respect to Plaintiff's back disorders, fibromyalgia, and mental impairments in relation to the Social Security Administration's listings and criteria for such conditions.  (Tr. 12-14).

Next, the ALJ assessed Plaintiff's Residual Functional Capacity ("RFC"),[9] and found that she has the RFC "to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except she is able to understand, remember and carry out instructions, make judgments on simple work related decision[s], interact appropriately with supervisors and co-workers in a routine work setting, and able to respond to usual work situations and changes in a routine work setting."[10]  In making this determination, the ALJ considered all of the Plaintiff's symptoms and the extent to which they can be reasonably accepted as consistent with the objective medical evidence and

_____

application and onset dates are either May 11, 2006 or June 21, 2006." [10] at p.2, n.1.  *See also* Commissioner's [13] Memorandum in Support of Motion for an Order Affirming the Commissioner's Decision. [13] at p.1, n.1.  The onset date is not material to the recommendation made herein.

[8]Citing 20 C.F.R. 404.1525 (listing of impairments), 404.1526 (medical equivalence), 416.925 (listing of impairments), and 416.926 (medical equivalence).

[9]"Residual functional capacity" is defined in the Regulations as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting.  20 C.F.R. § 416.945.

[10]Sedentary work is defined to involve lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

other evidence.[11]  He also considered the opinion evidence.[12]  (Tr. 14).  The ALJ found that

Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged

symptoms, but concluded that Plaintiff's statements concerning the intensity, persistence, and

limiting effects of these symptoms are not credible to the extent they are inconsistent with the

RFC assessment and did not preclude work activity.  (Tr. 15).

## THE VOCATIONAL EXPERT

Although the ALJ ultimately did not rely on his testimony, Vocational Expert ("VE")

Todd Edwards testified at the hearing.  Because one of the errors assigned by Plaintiff is

connected to the ALJ's step five determination, and the VE was presumably called to testify in

that regard, a summary of his testimony will be provided for context.  The VE first testified to

Plaintiff's past work history, noting that the positions she held in the past (and the ratings assigned

to that work) included nursing assistant (medium work, semi-skilled), a unit clerk (light work,

semi-skilled), an administrative assistant in the military (sedentary work, skilled), and surgical

technician (light work, skilled).  (Tr. 45).

The hypotheticals posed by the ALJ to the VE involved consideration of an individual of

the same age, education, and work experience as the claimant who would be able to perform light

work as defined in the Commissioner's regulations.  Restrictions included never climbing ladders,

ropes, or scaffolds, and avoiding even moderate exposure to extreme colds.  The ALJ also

hypothesized that the individual would be able to understand, remember, and carry out simple

---

[11]*See* 20 C.F.R. §§ 404.1529 (evaluation of symptoms, including pain) and 416.929 (same), and SSRs 96-4p, 96-7p.

[12]*See* 20 C.F.R. §§ 404.1527 (evaluating opinion evidence) and 416.927 (same), and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

instructions, make judgments on simple work related decisions, and interact appropriately with

supervisors and coworkers in routine settings.  The ALJ clarified this last portion of the

hypothetical as being able to  intermittently interact with the public and only occasionally interact

with coworkers.

After clarifying that this individual would be limited to simple tasks only, the VE testified

that this hypothetical individual would not be able to perform Plaintiff's past work.  The VE was

then asked if there any other jobs in the national or regional economy that such an individual

could perform, given certain added restrictions including avoiding all use of heavy moving

machinery such as automobiles, forklifts, and tractors, as well as avoiding all exposure to

unprotected heights.  The VE's opinion about past work did not change.

With regard to other work in the national/regional economy, the VE sought clarification

concerning interaction with the public and whether that interaction could be by telephone or direct

interaction.  After indicating that telephone or direct interaction with the general public did not

matter, but in either case would be limited to occasional (no more than one-third of the work day),

the VE testified that such an individual within this hypothetical could perform the work as an

Ironer (DOT number 590.685-042, which is light, unskilled work with 296,340 in the national

economy, 460 in the State of Mississippi); Poultry Eviscerator (DOT number 525.687-074, which

is light, unskilled work with 136,690 in the national economy, 9,480 in the State); and

Cleaner/Housekeeper (No. 323.687-014, which is light, unskilled work with 2,107,360 in the

national economy and 9,520 in the State).

The next hypothetical question built on the first, but the non-exertional mental limitations

were slightly altered so that while the individual would be able to understand, remember, and

carry out simple instructions and make judgments on simple work decisions, and the individual

would not be able to consistently respond to usual work situations and changes in a routine work

setting.  The VE asked for clarification with respect to the inability to respond to routine changes

in the work setting.  The ALJ explained that included any sort of change or malfunction in a work

schedule, i.e., if anything was to deviate from a normal work schedule that the individual would

decompensate to a point where they would not be able to readjust for that work day.  With this

clarification the VE testified that there would be no work for this claimant considering the work

history or any other work.[13]

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to inquiry into whether

there is substantial evidence to support the Commissioner's findings and whether the correct legal

standards were applied in evaluating the evidence.  *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th

Cir. 1988).  Substantial evidence is "more than a scintilla, less than a preponderance, and is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Hames

v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).  To be substantial, the evidence "must do more than

create a suspicion of the existence of the fact to be established."  *Id*. (citations omitted).  However,

"[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or

medical findings support the decision."  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal

citations and quotations omitted).

---

[13]The VE's testimony is in the record at (Tr. 45-48).  Questioning by Plaintiff's counsel
appears at (Tr. 48-54).  Plaintiff's counsel also requested that the record be left open to allow the
introduction of records (x-rays and MRIs) from the Veterans Administration.  The ALJ kept the
record open for two weeks for this purpose.  (Tr. 54-55).

Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). A court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell*, 862 F.2d at 475. If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders*, 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).

## THE ISSUES

Plaintiff frames her argument for reversal or remand as follows:

**A. The ALJ erroneously relied on evidence not presented in this case for the Step Five determination**; and

**B. The ALJ erroneously found Plaintiff not credible**.

[10] at pp. 13, 16. The Court will discuss these in turn.

## A.

The VE in this case identified specific light, unskilled jobs that Plaintiff could perform and were available in the national and state economies. However, in assessing Plaintiff's RFC, the ALJ found that Plaintiff retained the capacity to perform sedentary work. *See* nn. 10, 14. In his decision the ALJ went on to identify other jobs available in the national/state economy in the sedentary category. He reduced the residual functional capacity to sedentary work in consideration of the claimant's medically documented subjective complaints and the lumbar spine MRI. (Tr. 17). Moreover, he gave "some credence to subjective complaints of pain and

conclude[d] she is limited to sedentary work."  (Tr. 18).

Before concluding that Plaintiff has not been under a disability as defined in the Social

Security Act, the ALJ reasoned as follows:

> In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2.  If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11).  When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14).  If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

> If the claimant had the residual functional capacity to perform the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.21.  However, the additional limitations have little or no effect on the occupational base of unskilled sedentary work.  A finding of "not disabled" is therefore appropriate under the framework of this rule.  The claimant's additional mental limitations have only a slight effect on the occupational base.  The claimant retains the ability to understand, remember and carry simple job instructions, interact with others, and respond to work changes/situations.  I find the claimant can perform work existing in significant numbers in the national economy.  Examples of such work activity are the following unskilled and sedentary jobs: a nut sorter (521.687-010), a lamp shade assembler (739.684-094) and a stuffer (731.685-014) with 4,670, 430, and 2,530, respectively in the state economy and 483,020, 288,470, and 384,160, respectively in the national economy.

(Tr. 19).

Plaintiff argues that the ALJ did not provide an explanation for the origination of the

identity of the jobs he concluded were available and that Plaintiff could perform, and that the

evidence upon which he relied was not provided by the VE.  The explanation offered by Plaintiff

is that "it appears that the ALJ referenced vocational testimony provided in another matter, and

14

erroneously relied on that information in Plaintiff's case." [10] at p. 14.

Plaintiff further asserts that this alleged error is not harmless based on the rationale that "[i]f a claimant is limited to sedentary work, by definition light work is excluded.  20 C.F.R. §404.1567(a).  In contrast, if the VE were presented with hypothetical sedentary limitations, but the ultimate RFC finding was for light work, then the difference would be harmless because light work generally also includes the ability to perform sedentary work.  20 C.F.R. § 404.1567(b)."[14] [10] at p. 13.

The Commissioner concedes that the ALJ asked the VE an incorrect hypothetical question.[15]  The Commissioner argues that this was harmless error since the ALJ was permitted to find that Plaintiff could be found to be disabled without vocational expert testimony. [13] at pp. 14-18.

Moreover, even if the ALJ erred, Plaintiff is only entitled to relief if she can establish prejudice by the alleged error.  *See DeLeon v. Barnhart*, 174 F. App'x 201, 203 (5th Cir. 2006).  Indeed, as already mentioned, "[p]rocedural perfection in administrative proceedings is not required as long as the substantial rights of the party have not been affected . . . Procedural errors constitute bases for remand only where they cast into doubt the existence of substantial evidence to support the ALJ's decision."  *Gonzales-Sargent v. Barnhart*, 2007 WL 1752057, at *9 (W.D.

---

[14]For a definition of sedentary work, *see supra* n.10.  However, the VE here found Plaintiff able to perform light work.  Subsection (b) of 20 C.F.R. § 404.1567 defines light work and provides that "[i]f someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  As the ALJ pointed out, he actually reduced the RFC to sedentary.

[15][13] at p. 13 ("The ALJ, however, presented the [VE] with a hypothetical question that exceeded that [sedentary] RFC assessment.").

Tex. 2007) (internal quotations and citations omitted).  *See also Stephens v. Astrue*, 2011 WL 6826828, at *9 (S.D. Tex. 2011) (adding to the language and cases cited in *Gonzales-Sargent* that "where there is no realistic possibility that, absent the error, the ALJ would have reached a different conclusion, remand is not required") (internal quotations and citation omitted).

Significantly, the hypotheticals posed to the VE in the instant case were alternatively grounded on the premise that 1.) the individual would be intermittently interacting with the public and only occasionally interacting with co-workers and 2.) that individual would not be able to consistently respond to usual work situations and changes in a routine work setting.  These were identified as nonexertional limitations.  Yet the ALJ in his decision concluded that Plaintiff retains the ability to interact with others and respond to work changes/situations.[16]  Also significant is the fact that he did not expressly find that she could perform the full range of sedentary work, and included nonexertional limitations in his analysis.[17]

*Charpentier v. Astrue*, 2011 WL 2222262 (M.D. La. 2011), Report and Recommendation adopted, 2011 WL 2292232 (M.D. La. 2011), is similar to the instant case.  In *Charpentier*, the

_____

[16]The Commissioner admits that the ALJ "limited Plaintiff mentally to interacting appropriately with supervisors and co-workers in a routine work setting; responding to usual work situations; and no more than understanding, remembering, and carrying out simple instructions or making judgments on simple work-related decisions." [13] at p. 15.  As discussed below, the ALJ did not show how the jobs he identified–as opposed to those named by the VE–relate to the restrictions he found.  Put another way, there is no clear relationship between the nonexertional limitations the ALJ found–albeit less restrictive than those posed to the VE–and their significance with respect to the jobs the ALJ identified as available for Plaintiff to perform.

[17]The decision is couched in terms of "*if* the claimant had the residual functional capacity to perform the full range of sedentary work, . . ." (Tr. 19) (emphasis added).  Moreover, earlier in his analysis, the ALJ found Plaintiff suffered from the following severe impairments: degenerative disc disease, fibromyalgia, depression, and anxiety.  (Tr. 11).

ALJ found that the claimant had the RFC to perform a full range of certain work, and considering her age, education, and work experience a finding of not disabled would be directed by reference to a Medical-Vocational Rule.  Moreover, the additional limitations had little or no effect on the occupational base, with a finding of not disabled being appropriate.  2011 WL 2222262, at *2. One of the errors asserted by the claimant in *Charpentier* was that the ALJ erred at step five by relying on the Medical-Vocational Guidelines.[18]

The *Charpentier* court acknowledged the Commissioner's burden at step five, and recognized that "if the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that other jobs exist in the national economy."  *Id*. at *3 (citing *Selders* and *Newton*).  Because the claimant had nonexertional limitations (depression) that significantly affected her RFC (she could only perform work that did not require constant interaction with the public), the Medical-Vocational Rules could only be used as a framework that required vocational evidence to support the ALJ's finding at step five.  *Id*. at *4 (citations omitted).[19]

The ALJ in the instant case did not explain how he chose the jobs he identified that Plaintiff could perform or how the limitations affected her ability to perform them.  It is telling that the Commissioner does not offer an explanation for this omission.  It should be kept in mind that the ALJ limited the use of the Medical-Vocational Rules to a framework.  As a result he was

---

[18]The ALJ in *Charpentier* did not obtain evidence from a VE.

[19]As the court noted in *Charpentier*, the Medical-Vocational Rules are also referred to as "the grid" or the "Grid Rules."  *Id*. at *3 n.9.  For the sake of consistency, the instant report and recommendation will refer to them as the Medical-Vocational Rules, but cases cited may also use the term "grids."

required to rely on the testimony of the VE to support his ultimate finding.  In other words, the ALJ here erroneously performed the VE's function.  Thus, the ALJ did not apply the correct legal standard at step five, and this case should be remanded for that to occur.  *See also Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986) (ALJ did not produce expert vocational testimony but took administrative notice of Dictionary of Occupational Titles (DOT); DOT is not other similar evidence sufficient to satisfy Commissioner's burden); *Ferguson v. Schweiker*, 641 F.2d 243, 247-48 (5th Cir. 1981), *overruled on other grounds, Johnson v. Heckler*, 767 F.2d 180 (5th Cir. 1985) (general principles involving necessity of calling VE); *Hearne v. Barnhart*, 111 F. App'x 256, 257-58 & *fn. (5th Cir. 2004) (quoting *Ferguson*).

The Commissioner's attempt in the instant case to justify the ALJ's decision by citing cases involving various limitations to support exclusive reliance on the Medical-Vocational Rules is not persuasive.[20]  Here the ALJ has simply failed to "provide [the] reviewing court with a sufficient basis to determine that the correct legal principles were followed . . .".  *Charpentier*, 2011 WL 2222262, at *1 (citations omitted).

The Commissioner concedes that the VE's testimony was based on an incorrect hypothetical question and, therefore, the ALJ did not rely on it in rendering his decision. However, the record does not support the ALJ's sole reliance on the Medical-Vocational Rules in

---

[20]A sampling of cases the Commissioner cites are distinguishable.  *See, e.g., Eichelberger v. Chater*, 71 F.3d 879 (5th Cir. 1995) (ALJ found claimant could return to past relevant work and therefore did not refer to grid or reach step five); *Dollins v. Astrue*, 2008 WL 4402208 (E.D. Ky. 2008) (claimant had no exertional impairments and therefore occupational base included all jobs recognized by particular part of grids); *Rains v. Astrue*, 2008 WL 3457018 (W.D. Wis. 2008) (ALJ relied on VE's testimony); *Garcia-Martinez v. Barnhart*, 111 F. App'x 22, 2004 WL 2240136 (1st Cir. 2004) (only impairment was mental and VE did not testify); *Caldwell v. Barnhart*, 261 F. App'x 188, 2008 WL 60289 (11th Cir. 2008) (ALJ relied on VE's testimony); *Morris v. Barnhart*, 2006 WL 4045935 (D. Kan.2006) (ALJ adopted VE's findings).

reaching a decision in this case.  The Commissioner bears the burden at step five where these errors occurred and, based on the record before the Court, the ALJ's decision at this stage is not appropriately supported by substantial evidence.  Accordingly, remand is necessary for the ALJ to obtain appropriate evidence and provide reasoned support in identifying jobs available in the national/state economy that Plaintiff can perform in light of her limitations.

## B.

For the purposes of a complete review, the Court addresses Plaintiff's claim of error with respect to the ALJ's finding as to Plaintiff's credibility.  "[A]n ALJ's assessment of a claimant's credibility is accorded great deference."  *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000); *see also Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995) (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)) (stating that the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly").  However, "an ALJ's unfavorable credibility evaluation of a claimant's complaints of pain will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints of pain."  *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988) (citation omitted).

Plaintiff takes issue with the ALJ's assessment of the quality and extent of her daily activities (such as the amount of driving, cleaning, and shopping she does), but there is no absence of other credible choices or contrary medical evidence.  For example, evidence indicated Plaintiff is capable of preparing microwave dinners and sandwiches, making the bed, caring for her personal needs, reading, cleaning her home (including the bathroom), watching television, paying

her bills, handling a savings account, using a checkbook, counting change, driving, shopping by telephone and mail, attending church, and exercising.  Here, the ALJ stated specific reasons for discounting Plaintiff's credibility.  He properly weighed the opinions and evidence based on the entire record, and there is sufficient evidence in the ALJ's decision and the record to support his conclusion.  The ALJ's credibility determination does not warrant reversal or remand.

## CONCLUSION/RECOMMENDATIONS

Based on the foregoing, it is the recommendation of the undersigned that the Commissioner's [12] Motion to Affirm be **DENIED** and that the Plaintiff's [9] Motion for Summary Judgment be **GRANTED IN PART** and **DENIED IN PART**.  It should be granted to the extent that this case should be remanded to the Commissioner for proceedings consistent herewith specifically as to the finding of Plaintiff's ability to perform sedentary work and jobs which may be available for her to perform in the national/state economy as supported by testimony supplied by a VE.  It should be denied in all other respects.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules, any party within fourteen (14) days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge, and the opposing party.  The District Judge at the time may accept, reject, or modify, in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contain within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking

on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  28 U.S.C. § 636(b)(1); *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).[21]

THIS the 23rd day of February, 2012.

s/Michael T. Parker
United States Magistrate Judge

---

[21]*Douglass* referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.